THE ALLISON BROTHERS' COMPANY, Respondent, *v.* OSCAR W. ALLISON, Appellant.

*Assignment of patents, by an inventor — contract as to improvements thereafter invented by him — evidence of conversations with a person since deceased.*

An inventor and patentee of improvements in cigarettes and in machines for making cigarettes, assigned to other persons, in consideration of money invested by them in the business of manufacturing and selling, in partnership with him, cigarettes and cigarette machines, shares in his patents by written contracts, which included "any improvements, renewals or reissues of said cigarettes and cigarette machines or letters patent," and "new patents, machines, machinery or appliances which may be obtained or used in connection with said business." Thereafter the parties formed a corporation to carry on the business, to which the entire assets of the firm, including the patents and all the interests acquired

under said contracts were transferred, and the stock in which was divided among them. The inventor afterwards practically severed his connection with the company, and applied for and obtained a number of different patents for improvements in cigarette machines, none of which were infringements upon any of his former patented inventions, and made agreements with other parties for the manufacture and use of such improved machines. The company thereupon brought an action to restrain the inventor from manufacturing or selling any of the machines, and to have each of the said patents adjudged to be its property, and to be assigned to it.

*Held,* that the contracts, read in the light of surrounding circumstances, were to be construed as vesting in the plaintiff company the right to any and all inventions made and patents reissued to the defendant at any time, for improvements in cigarette machines or cigarettes, and hence, that the plaintiff was entitled to the relief demanded.

The plaintiff in its complaint asked for and obtained in the trial court a reformation of the contracts in question by adding thereto words more clearly providing that they included patents for improvements issued after the date of the contracts.

*Held,* that while it appeared that the contracts without amendment sustained the plaintiff's contention, still the evidence fully justified the trial court in holding that they should be reformed in accordance with the disclosed intention of the parties that the contracts should carry any and all inventions of the defendant relating to the improvement of cigarette machines thereafter made

The defendant had originally assigned to his brother a half interest in his original patents, and this brother was a party to the contracts and to the formation of the company, but had since died; on the trial, one of the other parties to the contracts and, as such, a stockholder in the plaintiff company, testified in relation to conversations in which the deceased brother had taken part; this evidence was objected to by the defendant as incompetent under section 829 of the Code of Civil Procedure.

*Held,* that as the defendant was not the executor, administrator or survivor of his deceased brother and did not derive his title or interest in the patents in suit from, through or under him, by assignment or otherwise, the prohibition of said section 829 did not apply to the case.

Appeal by the defendant, Oscar W. Allison, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of Monroe county on the 22d day of March, 1892, upon a decision of the court rendered after a trial at the Monroe equity term.

The action was brought to restrain the defendant from manufacturing, selling or furnishing to any person or corporation, to be used in any form for the manufacture of cigarettes, any of the machines referred to in the complaint, and from granting any license to use or

make the same, and to obtain a reformation of certain contracts and to have certain patents adjudged to be the plaintiff's property and to be assigned to it.

*Theodore Bacon*, for the appellant.

*John Van Voorhis*, for the respondent.

LEWIS, J.:

The plaintiff is a domestic corporation. Its business is that of manufacturing and selling cigarettes and cigarette machines.

The defendant, prior to the times hereinafter mentioned, had invented new and useful improvements in machines for manufacturing cigarettes. He had also invented improvements in cigarettes. Letters patent had been issued to him for said inventions, and in connection with a Mr. Kimball of the city of Rochester, he had been engaged in business relating to said inventions.

Thereafter, and in the year 1882, the defendant and his brother, John A. Allison (who had by assignment from Oscar become the half owner of the patents) and Mr. F. De Witt Clark, formed a copartnership for the manufacture and sale of cigarettes and cigarette machines in the city of Rochester. Clark put in as working capital $5,000, and the Allisons, in consideration of said advancement by Clark, assigned to him an interest in said patents. The business was started, and in a short time the money invested by Clark was exhausted, and thereupon a written contract, dated October 9, 1882, was made by the parties, by the terms of which the Allisons for a good consideration paid by Clark, each assigned and transferred to Clark one-sixth of their respective interests in and to said letters patent "for an improvement in cigarettes and cigarette machines, and any improvements, renewals or reissues of said cigarettes and cigarette machines or letters patent, same to be held and enjoyed by said F. De Witt Clark for the whole of the United States, and to the full end of the term for which said letters patent were granted, and for the term of any extension of any improvements thereof or reissue or reissues thereon, as fully and entirely as the same would have been held and enjoyed by us (the Allisons) if this agreement and sale had not been made, meaning hereby to vest

in said F. De Witt Clark one undivided third of said patents, extensions or improvements thereof, and we do each of us, said Oscar W. Allison, John A. Allison and F. De Witt Clark each mutually agree with the other that neither of us will sell, dispose of, license or grant any portion of our said interest in and to same to any person or persons or corporation without the written consent of the other two being first obtained therefor, and any such transfer shall be void in the absence of such written consent being obtained."

Clark thereupon advanced the further sum of $10,000, which was put in and used in the business. And the exigencies of the business requiring more money, on the 5th day of February, 1885, the Allisons and Clark entered into a written agreement with one Frederick P. Allen, by which Allen became the owner of a quarter interest in the patents and business, paying therefor the sum of $25,000. The agreement recites that in consideration of that sum paid by Allen, the Allisons and Clark of the first part, " do hereby sell, assign and convey to the party of the second part (Allen), the machinery, stock, etc., now used and owned by said parties of the first part, in the manufacture of tobacco, cigarettes, etc., under the firm name of Allison Brothers & Company, as well as new patents, machines, machinery or appliances which may be obtained or used in connection with said business ; and the parties of the first part do hereby covenant and agree to make all proper assignments of patents, etc., for that purpose whenever desired. The intention of this agreement being that each of said parties of the first part and second parts shall have and hold each respectively an undivided one-fourth interest in all the patents and improvements on same which may hereafter be made, machines, stock and business of the firm of Allison Brothers & Co."

Allen advanced the $25,000, and the business was continued in the name of Allison Brothers & Co. Clark and Allen continued to make advances for the benefit of the business until all the advances aggregated about $75,000. Thereafter, by mutual agreement between the parties, a corporation was formed by the name of the Allison Brothers Company, being the plaintiff herein, and the entire assets of the firm of Allison Brothers & Co., including the patents and all the interests acquired by the contracts were transferred to the plaintiff corporation. The capital stock of the corporation was fixed at

the sum of $250,000, which was equally divided amongst the four partners.

During all the times mentioned, the defendant was the general manager of the business, and was engaged in inventing improvements in the cigarette machines; and during such time he invented an improvement in the cigarette machine, which was duly patented in the name of the plaintiff, and he also prepared plans for still another improvement, which was thereafter patented, and was one of the five patents hereafter mentioned. The defendant was paid a salary by the firm for his services.

The Allisons, soon after the formation of the corporation, sold and transferred to Allen and Clark the most of their stock in the corporation. John soon thereafter died and Oscar practically severed his relations with the company and devoted his attention to inventing improvements in cigarettes and cigarette machines, and thereafter applied for and obtained five different patents for improvements in said machines in his own name. It was conceded upon the trial of the action, that neither of these five patents was an infringement upon any of the prior inventions of the defendant which had been patented. The defendant finally entirely severed his relations with the plaintiff, and after obtaining said five patents he entered into agreements with other parties to manufacture and use his improved machines, and sold said five patents to parties in New York for the sum of $100,000. These patents having been obtained by the defendant after the commencement of this action, an order was granted permitting the plaintiff to serve a supplemental complaint so as to include the said five patents in the relief asked for in the complaint, and the supplemental complaint was accordingly served. In the specifications for each of said five patents Allison states that he had invented new and useful improvements in cigarette machines, and describes the characteristics of the improvements.

The oral evidence quite satisfactorily establishes that it was represented by the defendant from time to time during the negotiations of the parties prior to executing the several contracts, that the machines were still crude and imperfect, and that the skill and genius of the defendant would be requisite and would be at the service of the company in inventing improvements and perfecting the machines, and that the company should have the use and advantage

of the defendant's inventions in the business, and it is apparent that Clark and Allen would not have consented to invest in the enterprise the considerable amount of money they did had there not been such an understanding.

The contention of the parties arises over the construction to be given to these various contracts, the plaintiff contending that they not only vest in it the machines and patents in existence at the dates of the contracts respectively, but that in addition thereto they include any and all patents which might at any time thereafter be obtained for inventions for improvements in cigarette machines or cigarettes made by the defendant.

The defendant, on the contrary, claims that the contracts only cover the inventions and machines in existence at the date of the contracts respectively.    The contracts were unskillfully drawn. The phraseology used does not, with entire clearness, sustain the construction claimed by the plaintiff.    Read, however, in the light of the surrounding circumstances as disclosed by the evidence, we incline to adopt the construction contended for by the plaintiff and hold that without reformation or amendment they vested in the plaintiff the right to any and all inventions made, and patents issued to the defendant at any time, for improvements in cigarette machines.

Giving the construction to the contracts contended for by the defendant, we are not able to see the meaning of the sentence in the contract of date October 9, 1882, " And for any improvements, renewals or reissues of said cigarettes, and cigarette machines or letters patent," nor the meaning of the sentence in the contract of February 5, 1883, as follows: " As well as new patents, machines, machinery or appliances which may be obtained or used ,in connection with said business, and the parties of the first part do hereby covenant and agree to make all proper assignments of patents, etc., for that purpose whenever desired.    The intention of this agreement being that each of said parties of the first part and second parts shall have and hold each, respectively, an undivided one-fourth interest in all the patents and improvements on the same which may hereafter be made."    If the sentences quoted above are not surplusage, if they have any meaning, they were intended to provide for any improvements, renewals or reissues of patents which might be thereafter made or granted, as well as those already made or granted.

The words "improvements, renewals and reissues," when used in connection with patents, have a well-understood meaning.

The United States Revised Statutes provide for patenting any new or useful machine, or any new or useful improvement thereof. The applicant is required to state whether he is the inventor of the machine or improvement which he desires patented.

Curtis says in his work on Patents, section 22 : "A patent for the improvement of a machine is the same thing as a patent for an improved machine. Improvement applied to machinery is where a specific machine already exists and an addition or alteration is made to produce the same effects in a better manner, or some new combinations are added to produce new effects. In such cases the patent can only be for the improvement or new combination."

A machine may be improved by adding to or taking therefrom one or more of its parts.

The Century Dictionary defines the word "improvement:" "In patent law, an improvement is an addition to or change in some specific machine or contrivance by which the same effects are produced in a better manner than before, or new effects are produced."

Bouvier defines "improvement" as "An addition of some useful thing to a machine, manufacture or composition of matter."

In common parlance, we speak of a machine as an improved machine when there has been added a new device which makes it work more efficiently.

The record shows that machines for the manufacture of cigarettes were in use as early as 1876. The first patents issued for the inventions of the defendant were adapted to and used as adjuncts of the original machine. So were also the five patents mentioned.

There was in the plaintiff's complaint a count asking for a reformation of the several contracts by adding thereto words more clearly providing that they included patents for improvements issued after the date of the contracts, and a portion of the relief granted included such reformation.

As we have stated, we are of the opinion that the contracts without amendment sustain the plaintiff's contention, but if not we think the evidence fully justified the court in holding that they should be reformed. There can be no reasonable doubt that it was

the intention of the parties that the contract should carry any and all the inventions of the defendant relating to the improvement of cigarette machines thereafter made. The amendments directed were probably much more voluminous than was necessary in any view of the case, but if the plaintiff was entitled to a reformation of the contracts no injury is caused to the defendant because of the length of the amendments.

The evidence of the witness Clark was taken conditionally before trial. Considerable latitude was allowed in taking his evidence. The case was tried without a jury, and we do not find any such errors in the rulings of the court as would justify a reversal of the judgment. Clark was interrogated as to conversations with the Allisons at times when they were both present. An objection was made that the evidence was incompetent under section 829 of the Code, John A. Allison being dead. Oscar Allison was called as a witness, and testified as to what was said at those conversations. This action is between the plaintiff corporation and Oscar W. Allison to compel him to assign these patents to the plaintiff. His brother John had no interest in the patents; it is not apparent how the inhibition of section 829 applies to this case. Oscar was not the executor, administrator or survivor of his brother John. Neither did he derive his title or interest from, through or under John, by assignment or otherwise.

It is suggested by the defendant's counsel that to hold that the contracts covered all inventions made by the defendant to cigarette machines for all time would practically result in making a slave of the defendant. We fail to see the force of this suggestion. The defendant for a consideration agreed that the plaintiff should have the benefit and advantage of his labors and inventions relating to improving cigarette machines and cigarettes only, and in no other field of inventions.

Contracts of a like character are frequently made. The proprietors of a factory may contract to furnish to another the entire product of their factory for a time in the future agreed upon.

It is quite unlikely that the Allisons could have obtained the money from Clark and Allen without the understanding that the business should thereafter have the benefit of the services and talent of the defendant in that department of invention.

The judgment appealed from should be affirmed, with costs of the appeal.

MACOMBER and HAIGHT, JJ., concurred; DWIGHT, P. J., not voting.

Judgment appealed from affirmed, with costs.